688 A.2d 54

**TOWN OF PORT DEPOSIT, et al.,**

v.

**Pierre PETETIT, et ux.**

**No. 234, Sept. Term, 1996.**

Court of Special Appeals of Maryland.

Jan. 30, 1997.

William J. Chen, Jr., Rockville, for appellant, Port Deposit.

Daniel Karp (Denise Ramsburg Stanley and Allen, Johnson, Alexander & Karp, Baltimore, on the brief) for appellant, Maranto.

Daniel M. Clements (Andrew D. Alpert, Israelson, Salisbury, Clements & Bekman and Max D. Miller of Bel Air, MD on the brief), Baltimore, for appellee.

Argued before WILNER *, C.J., and MOYLAN, J., and THEODORE G. BLOOM, J. Retired (Specially Assigned).

THEODORE G. BLOOM, Judge, Retired Specially Assigned.

These appeals by the Town of Port Deposit (the Town) and its former chief of police, Samuel Maranto, are from an order of the Circuit Court for Harford County (Whitfill, J.) refusing to dismiss with prejudice or grant summary judgment with respect to certain counts in a complaint filed by appellees, Pierre Petetit and his wife, Becky. The jurisdictional basis for the Town's appeal from the interlocutory order is its claim of governmental immunity; the jurisdictional basis for Maranto's appeal is his claim of public official immunity.

### Issues

The sole issue presented to us by the Town is:

Did the appellees' complaint state causes of action against the Town of Port Deposit for which relief could be granted?

Maranto presents two issues:

1. Did the circuit court err in denying Chief Maranto's motion to dismiss Plaintiffs' state constitutional claim or for summary judgment based on immunity where Plaintiffs could demonstrate no evidence of actual malice?

2. Did the circuit court err in refusing to dismiss Counts Four, Seven and Eight without leave to amend when

---

* Wilner, C.J., participated in the hearing and decision of this case while an active member of this Court; after being appointed to the Court of Appeals, he was specially assigned to the Court of Special Appeals and participated in the adoption of this opinion.

they were brought in violation of the conditions placed by the federal court pursuant to Federal Rule of Civil Procedure 41(a)(2) on Plaintiffs' voluntary dismissal without prejudice?

Intertwined with those issues is a jurisdictional question: are these appeals, or either of them premature?

### *Facts*

The following statement of facts was described in the Memorandum Opinion and Order of the circuit court as "undisputed." None of the parties has challenged that description.

On the evening of 14 November 1992, appellee Pierre Petetit, a resident of the State of Oregon, went to Harvey's, Jr., a bar at the intersection of Arena Road and Conowingo Road (U.S. Route 1) in Harford County. Between 10:00 p.m. and 2:00 a.m. that night, he consumed approximately seven alcoholic drinks.

Around 2:00 a.m. on the 15th, Mr. Petetit became involved in a verbal confrontation with several other customers in the bar, including Jeffrey Keeney and Burton Anderson. Mr. Petetit exited the bar, intending to leave the area. The verbal altercation, however, continued onto the parking lot and escalated into a violent assault on Petetit by unidentified patrons of the bar. Mr. Petetit entered his truck to escape the attack, whereupon his assailants began throwing rocks at the truck; one of them attempted to jump onto the truck's running board. Mr. Anderson ran into the path of the truck and was struck by it. Mr. Petetit proceeded to drive away from the scene in order to escape his attackers and to seek police protection.

Just as Mr. Petetit was leaving the bar's parking lot, Maranto (then Chief of Police of the Town of Port Deposit), who was driving home from work, passed Harvey's, Jr. He was in plainclothes, off-duty, and driving his own personal vehicle with a passenger in it. As he passed Harvey's, Jr., at approximately 2:15 a.m., he saw several men throwing rocks at Petetit's truck, the truck striking Anderson, and Petetit

speeding off. Maranto let his passenger out of the car and instructed him to call police.

Leaving the premises, Petetit drove south on U.S. Route 1 in search of help. Observing a vehicle following him in a manner that he interpreted as threatening and believing that the bar patrons who had assaulted him were pursuing him in that vehicle, Mr. Petetit increased his speed in an attempt to reach the Bel Air Police Barracks before being overtaken. The vehicle pursuing him was Maranto's. Believing that Petetit was placing the public at risk, Maranto fired several shots at the rear wheel of Petetit's truck. That high-speed pursuit continued for approximately eight miles, with Petetit being unaware that he was being pursued by a police officer and not by the men who had attacked him. Petetit's truck finally came to a stop when the right front tire blew out as he attempted to make a U-turn in order to get the attention of a passing state trooper. Emerging from his vehicle, Maranto pointed a gun at Petetit, identified himself as a police officer, pulled Petetit from his truck and threw him to the ground, placed handcuffs on him, and detained him until a state trooper arrived.

### Procedural History

On 10 November 1993, Pierre and Becky Petetit filed in the Circuit Court for Harford County a multiple count complaint asserting various causes of action against appellants, including a count based on 42 U.S.C. § 1983. Citing appellees' assertions of federal constitutional claims, appellants succeeded in having the case removed to the United States District Court for the District of Maryland on the basis of federal question jurisdiction.

On 20 December 1993, appellees sought leave to amend their complaint, which the District Court granted. Two months later, the court granted Maranto's motion to dismiss Counts One (gross negligence), Two (negligence), Five (intentional infliction of emotional distress), Eight (injury to filial [sic] relationship), and Ten (violation of 42 U.S.C. § 1983), and

further denied appellees' motion to extend discovery. Appellees then sought to amend their complaint again, in order to substitute causes of action alleging violations of the Maryland Declaration of Rights for the stricken federal constitutional claims. Neither appellant opposed the motion. Appellees also requested the court to remand the case to the Maryland court, citing the then-existing lack of federal question jurisdiction. The court denied the motion to remand because, despite the absence of a federal question, the court had diversity jurisdiction. Nevertheless, the court granted appellees' motion for leave to amend their complaint.

On 12 April appellant Maranto subsequently filed a motion to dismiss for failure to state a claim or, alternatively, to grant summary judgment with respect to Counts Six (violations of the Maryland Declaration of Rights), Seven (loss of consortium), and Nine (assault). The plaintiffs responded by moving to dismiss the case voluntarily, without prejudice, intending to litigate their claims in a Maryland court. In his memorandum opinion and order, Judge Frederick Smalkin granted the Petetits' motion to dismiss without prejudice, stating:

> The only possible prejudice to the defendants from reinstitution of the suit in a state court can be avoided by conditioning the order of dismissal on prohibition of assertion of any claims other than those stated in the complaint as presently amended, and on prohibition of further discovery by the plaintiffs without leave of court, all of which the Court has power to order under the broad authority under (F.R.Civ.Pr.) 41(a)(2).

The following counts remained at the time Judge Smalkin granted the motion to dismiss:

| Count | | Defendant |
|---|---|---|
| Three: | Respondeat Superior | Town |
| Four: | Negligent Hiring and Supervision | Town |
| Six: | Violation of Maryland Declaration of Rights | Maranto |

| Seven: | Loss of Consortium | Maranto and Town |
| Nine: | Assault | Maranto |
| Ten: | Violations of Maryland Declaration of Rights | Maranto and Town |

---

After the voluntary dismissal of this action in the federal court, appellees filed in the Circuit Court for Harford County an eight count complaint against the Town and Samuel Maranto, asserting the following causes of action:

| Count | | Defendant |
| --- | --- | --- |
| One: | Violation of Maryland Declaration of Rights | Maranto |
| Two: | Violation of Maryland Declaration of Rights | Town |
| Three: | Gross Negligence | Maranto |
| Four: | Loss of Consortium | Maranto |
| Five: | Negligence | Maranto and Town |
| Six: | Loss of Consortium | Town |
| Seven: | Battery | Maranto and Town |
| Eight: | Loss of Consortium | Maranto and Town |

Appellees alleged in their complaint that the Town was responsible for providing law enforcement services and was responsible for the training, instruction, supervision, discipline, control and conduct of . . . Maranto, and had the power, right and duty to control the manner in which [Maranto] carried out the objectives of [his] employment and to see that all policies, order, rules, instructions and regulations promulgated for [Maranto] were consistent with

the constitution and law of the United States, State of Maryland and the municipality.

They further alleged that at all times referred to in the complaint Maranto "was acting under color of law and pursuant to his authority as a law officers [sic] of the Town of Port Deposit, Maryland." With respect to Maranto, appellees asserted that he acted "intentionally, negligently, wantonly, reckless, maliciously, and ... with complete and deliberate indifference for [Petetit's] rights...."

In response to appellees' complaint, the Town filed a motion to dismiss; Maranto also filed a motion to dismiss, or alternatively, for summary judgment. On 8 December 1995, Judge Whitfill issued a memorandum opinion and order dismissing Counts Four, Seven and Eight, with leave to amend, and Counts Three, Five, and Six, without leave to amend. With respect to Counts One and Two, the court dismissed claims for punitive damages without leave to amend but denied appellants' motions to dismiss those counts on grounds of immunity. The Town and Maranto appealed the circuit court's order.

**I**

Generally, a party may only appeal from a final judgment, that is, a judgment that settles the rights of the parties or concludes the cause. Md.Code (1974, 1995 Repl.Vol.), § 12–301 of the Courts and Judicial Proceedings Article (C.J.); *In re Special Investigation No. 231*, 295 Md. 366, 455 A.2d 442 (1983). C.J. § 12–303 specifically authorizes appeals from certain interlocutory orders, but none of them are applicable to this case. A judgment that adjudicates less than all claims arising out of the same transaction is not a final judgment in the absence of an express determination that there is no just reason for delay, coupled with an order directing the entry of a final judgment. Md.Rule 2–602; *Harkins v. August*, 251 Md. 108, 246 A.2d 268 (1968).

Obviously, the denial of Maranto's motion to dismiss or for summary judgment as to Count One, the Town's motion to dismiss Count Two, and the dismissal of Counts Seven and

Eight with leave to amend do not constitute a final judgment on the merits of the litigation. The Court of Appeals has " 'long recognized, however, a narrow class of orders, referred to as collateral orders, which are offshoots of the principal litigation in which they are issued and which are immediately appealable as "final judgments" without regard to the posture of the case.' " *State v. Jett*, 316 Md. 248, 558 A.2d 385 (1989), quoting *Harris v. Harris*, 310 Md. 310, 529 A.2d 356 (1987).

To be appealable under the collateral order doctrine, an order

> must (1) conclusively determine the disputed question, (2) resolve an important issue, (3) be completely separate from the merits of the action, and (4) be effectively unreviewable on appeal from a final judgment.

*Jett*, 316 Md. at 251, 558 A.2d 385. *See also Bunting v. State*, 312 Md. 472, 477, 540 A.2d 805 (1988); *Clark v. Elza*, 286 Md. 208, 213, 406 A.2d 922 (1979).

Both appellants assert that the order appealed from was an immediately appealable collateral order because it denied them the immunity from suit to which they were entitled—in the case of Maranto, the qualified immunity of a public official exercising discretionary functions; in the case of the Town, a municipality's immunity from tort suits with respect to its governmental activities.

In *State v. Hogg*, 311 Md. 446, 535 A.2d 923 (1988), the Court of Appeals held that the collateral order doctrine permitted immediate review of the denial of a motion by the State and its agency, the Maryland Deposit Insurance Fund Corporation, to dismiss, on grounds of governmental immunity, a counterclaim for recoupment. The Court noted that the policy underlying the doctrine of sovereign immunity not only protects the public treasury but also protects the State and its instrumentalities from standing trial. The Court in *Hogg* noted that in *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), the Supreme Court entertained, under the collateral order doctrine, an appeal from the denial of a defendant's motion for summary judgment predicated on the

qualified immunity of public officials exercising discretionary functions. The Supreme Court explained that

> [t]he entitlement is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial. Accordingly, the reasoning that underlies the immediate appealability of an order denying absolute immunity indicates to us that the denial of qualified immunity should be similarly appealable: in each case, the district court's decision is effectively unreviewable on appeal from a final judgment.

*Id.* at 526–27, 105 S.Ct. at 2816.

The refusal of the circuit court to grant Maranto's motion is not an immediately appealable collateral order because it does not conclusively determine the disputed question as to whether he is immune from suit.

Chief Judge Wilner, writing for this Court in *Artis v. Cyphers,* 100 Md.App. 633, 642 A.2d 298, *aff'd mem.,* 336 Md. 561, 649 A.2d 838 (1994), pointed out that, although *State v. Hogg, supra,* 311 Md. 446, 535 A.2d 923, has not been overruled and thus remains the law, the Court of Appeals limited its applicability with respect to immediate appealability in *Bunting v. State,* 312 Md. 472, 540 A.2d 805 (1988), in which the Court noted that

> there were a number of immunity-type rights that, in a broad sense, could be regarded as trial-avoidance rights but which did not permit interlocutory appeals, mentioning, among others, the States' right under the Eleventh Amendment to avoid being haled into Federal Court as a defendant. [The *Bunting* Court] concluded, at 481–82, 540 A.2d 805:
>
>> In sum, the idea that an issue is not effectively reviewable after the termination of the trial because it involves a "right to avoid the trial itself, should be limited to double jeopardy claims and a very few other extraordinary situations. Otherwise, as previously indicated, there would be a proliferation of appeals under the collateral order doc-

trine. This would be flatly inconsistent with the long established and sound public policy against piecemeal appeals."

100 Md.App. at 642, 642 A.2d 298. In a footnote to that last sentence, the Court of Appeals stated that *Hogg* should not be viewed as reflecting a contrary policy. In his concurring opinion, however, Judge Eldridge expressed the belief that the approach taken in *Bunting* could not be reconciled with that taken in *Hogg* and that *Hogg* should be overruled.

Unless and until *Hogg* is overruled by the Court of Appeals, we must attempt to reconcile it with *Bunting* and *Artis*. *Bunting* held that denial of a motion to dismiss an indictment for violation of the "single transfer rule" embodied in the Interstate Agreement on Detainers (Md.Code., art. 27, § 616D(d)) was not immediately appealable under the collateral order doctrine. The right claimed by the accused was held to be a right not to be returned to the original place of confinement without standing trial, not a right to avoid the trial itself.

In *Artis*, the appellant, a certified cardiac rescue technician and member of a Baltimore City ambulance crew, was sued by the widow of a patient who died while being treated, allegedly negligently, by the appellant. The appellant claimed immunity under two theories: public official immunity and "good Samaritan" immunity. As explained in *Artis*, in order for one claiming public official immunity to be relieved of liability for his negligent acts, two factors must " 'simultaneously exist: (1) the individual actor, whose alleged negligence is at issue, is a *public official* rather than a mere *government employee or agent;* and (2) his tortious conduct occurred while he was performing *discretionary* as opposed to *ministerial* acts in furtherance of his official duties.' " 100 Md.App. at 638, 642 A.2d 298, quoting *James v. Prince George's County,* 288 Md. 315, 323–24, 418 A.2d 1173 (1980). If both of those factors exist, a qualified immunity attaches, that is, in the absence of malice, the individual is free from liability. *Id.* The good Samaritan immunity claimed by the

appellant is found in Md.Code (1974, 1995 Repl.Vol.), §§ 5–309 and 5–309.1 of the Courts and Judicial Proceedings Article, which provides immunity from liability for tortious acts or omissions if the individual falls within the enumerated categories of persons protected by the statute and the alleged negligence did not amount to gross negligence. Both public official immunity and good Samaritan immunity are conditional, the former being conditioned on the absence of malice and the latter on the absence of gross negligence, and the existence *vel non* of those factors are generally issues of fact to be determined at trial. Therefore, the existence of the claimed immunity is not "completely separate from the merits of the action" and, by the same token, are not "effectively unreviewable on appeal from a final judgment."

*Hogg*, which involved a claim of sovereign immunity by the State and one of its agencies, which is a claim of absolute immunity as a matter of law, independent of any facts that might arise at trial, is not incompatible with either *Bunting* or *Artis*. *Hogg* does, however, contain the following quotation from *Mitchell v. Forsyth*, 472 U.S. 511, 526–27, 105 S.Ct. 2806, 2815–16, 86 L.Ed.2d 411 (1985), in which the Supreme Court entertained, under the collateral order doctrine, an appeal from the denial of a motion for summary judgment predicated on the qualified immunity of a public official exercising discretionary functions.

*Mitchell* explained that

["t]he entitlement is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity it is effectively lost if a case is erroneously permitted to go to trial. Accordingly, the reasoning that underlies the immediate appealability of an order denying absolute immunity indicates to us that the denial of qualified immunity should be similarly appealable: in each case, the district court's decision is effectively unreviewable on appeal."

The Court of Appeals then stated that it had recognized a similar rule in *Public Serv. Comm'n v. Patuxent Valley Conservation League*, 300 Md. 200, 477 A.2d 759 (1984), in which it

allowed an immediate appeal by individual commissioners of the Public Service Commission from an order permitting them to be deposed in an administrative appeal from a Commission decision.

The references to *Mitchell v. Forsyth* and *Public Service Comm'n v. Patuxent Valley Conservation League* are, of course, mere *dicta.* The *holding* in *Hogg,* that an erroneous denial of a claim of sovereign immunity by the State or one of its agencies is immediately appealable under the collateral order doctrine because it is similar to the erroneous denial of a double jeopardy defense, is not inconsistent with *Bunting* or *Artis.*

Appellant Maranto's defense is the qualified immunity defense of a public official. There is no question but that, as chief of police, he was a public official and not a mere government employee or agent. Nor is there any basis of dispute as to the fact that in pursuing and arresting Mr. Petetit he was performing a discretionary rather than a ministerial function. Nevertheless, the immunity he claims is only available to him if he acted without malice, and ordinarily, the presence or absence of malice is a fact to be determined at trial. He contends, however, that there is no factual basis for any conclusion that he was motivated by malice. If that were the case, his right to an immediate appeal under the collateral order doctrine would not be inconsistent with *Artis.* As noted in *Artis,* the Federal appellate courts that have construed *Mitchell v. Forsyth* have held that, when the existence of qualified immunity does not hinge on unresolved disputed facts but are determinable as a matter of law, immediate appeals have been allowed. When, however, resolution of the immunity defense depends upon disputed factual issues, or upon mixed questions of fact and law, an immediate appeal will not lie, and review of the qualified immunity determination will have to await the trial court's resolution of the factual questions. 100 Md.App. at 652, 642 A.2d 298.

Whether a defendant possesses a qualified immunity is ultimately an issue of law for the court to determine. To

the extent that it depends on the resolution of disputed facts, however, some of those disputes—the existence of gross negligence or malice, for example—may be for the trier of fact to resolve; others—whether the defendant is a public official and, if so, whether the duty he was performing was discretionary or ministerial—will be for the court. To the extent the issue hinges on factual disputes that must be resolved by the trier of fact, the court will not be able to resolve the legal issue on preliminary motion, thereby forcing the defendant to wait until judgment has been entered. Where the factual issues can be resolved by the court, the parties may take advantage of Md.Rule 2–502 and have the court decide those facts and with them the legal issue of immunity, preliminarily.  In that circumstance, immediate appellate review of a ruling rejecting the qualified immunity defense would be permissible, for it would place the appellate court in no different position than if it were reviewing the rejection of an absolute immunity defense or a *Harlow* type of qualified immunity defense; the issues would be legal ones.

*Id.* at 653–54, 642 A.2d 298.

We shall examine appellant Maranto's immunity claim with the above principles in mind.

## II

We note that appellant Maranto's motion to dismiss all of the counts against him was based on the order of the United States District Court barring certain claims and on the general assertion that those counts failed to state a claim upon which relief could be granted.  The alternative motion for summary judgment merely asserted that there was no dispute of material facts and that Maranto was entitled to judgment as a matter of law.  The detailed grounds for the summary judgment motion were set out in a memorandum filed with the motion, and the gist of his argument for immunity was that, because he was alleged to have been acting under color of his office, he is immune from suit unless he acted with malice, and

there is no allegation of actual malice and no factual basis for any conclusion that he was motivated by malice.

In *Davis v. DiPino,* 99 Md.App. 282, 290, 637 A.2d 475 (1994), *rev'd on other grounds,* 337 Md. 642, 655 A.2d 401 (1995), this Court stated:

> In the absence of a statute, "an official who violates an individual's rights under the Maryland constitution is not entitled to any immunity, and ... the presence or absence of malice is pertinent only to the question of punitive damages." *Clea v. City of Baltimore,* 312 Md. 662, 684, 541 A.2d 1303 (1988). There is however, a statutory immunity that is applicable to this case. Md.Code Ann.Cts & Jud. Proc. art. § 5–321(b)(1) (1991 Repl.Vol.) provides:
>
> > An official of a municipal corporation, while acting in a discretionary capacity, without malice and within the scope of the official's authority, is immune as an official or individual from civil liability for the performance of the action.

Section 5–321(b)(1) of the Courts and Judicial Proceedings article

> has an important operative effect on Maryland constitutional and non-constitutional claims against sworn law enforcement officers of a municipal corporation's police department. It assigns to the plaintiff the burden of pleading—and proving—that the defendant-officer acted with "malice." ... In claims based on Maryland law, malice is established by proof that the defendant-officer "intentionally performed an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff." *Leese v. Baltimore County,* 64 Md.App. 442, 480, 497 A.2d 159 (1985).

*Davis v. DiPino,* 99 Md.App. at 290–91, 637 A.2d 475.

In this appeal, Maranto first contends that he is immune from liability for the constitutional tort because "it is clear and undisputed, as a factual matter," that appellees can demonstrate no evidence of actual malice. His second conten-

tion is that the circuit court erred in refusing to dismiss Counts Four, Seven, and Eight without leave to amend because appellees were precluded from asserting those causes of action by the order passed by the federal court when it permitted appellees to dismiss their action in that court without prejudice.

We shall not address the second contention. Our discussion of Maranto's first contention will be applicable to Counts Four, Seven, and Eight as well as to Count One, however, since immunity of a police officer from liability for torts committed while acting in a discretionary capacity, without malice, within the scope of his authority, applies to non-constitutional torts, such as battery, as well as to constitutional torts.

Maranto correctly observes that it is beyond dispute that he arrived at the Harvey's, Jr., bar in time to see Petetit's truck strike Anderson and drive off, and that he chased Petetit, who did not stop until his vehicle was disabled when it hit a median strip. He asserts that he fired at Petetit's truck because he believed—rightly or wrongly—that attempting to disable the vehicle with shots to the tire was preferable to allowing Petetit to continue speeding down the road, and he argues that no jury could conclude that he acted with an evil or rancorous motive influenced by hate, with the willful and deliberate intent to injure Petetit.

Maranto's argument may be an effective one when addressed to a jury, but the issue before the circuit court was whether Maranto was entitled to summary judgment. Appellees had alleged that Maranto acted with malice and fired at least three shots at Petetit "with malice and with the intent to cause injury and damage."

The circuit court denied Maranto's motion for summary judgment, correctly observing that, although the basic facts are not in dispute, "there are inferences to be drawn from the facts that are in the province of the trier of fact." We agree that an inference of actual malice can reasonably be drawn by the trier of facts from those facts that are not basically in

dispute in this case. From Maranto's conduct, an inference can be drawn that he became enraged at what appeared to him to be grossly reckless conduct by Petetit, endangering others on the highway, and that he fired at Petetit or Petetit's vehicle with the intention of injuring Petetit. At issue was Maranto's motive or intent, and "[o]rdinarily, summary judgment is inappropriate when intent and motive are critical to the proof of a case." *Gross v. Sussex,* 332 Md. 247, 256, 630 A.2d 1156 (1993). "Cases that primarily raise issues of fraud or intent are ... generally ill-suited for summary judgment due to the need for greater than usual factual development." *Berkey v. Delia,* 287 Md. 302, 306, 413 A.2d 170 (1980).

The issue of malice being one for the jury to decide, Maranto will have to wait until judgment has been entered before he can appeal. Because the issue of immunity is not completely separate from the merits of the action, this appeal is premature, and we must therefore dismiss it.

### III

The Town claims governmental immunity from suit. It has long been recognized that the doctrine of sovereign or governmental immunity protects the State of Maryland from suit unless the immunity has been waived by the General Assembly. *See Maryland–National Capital Park and Planning Commission v. Kranz,* 308 Md. 618, 622, 521 A.2d 729 (1987), and the cases cited therein.

With respect to the extension of that immunity to State agencies, counties, and municipalities, Judge Eldridge, writing for the Court of Appeals in *Board v. Town of Riverdale,* 320 Md. 384, 388–89, 578 A.2d 207 (1990), explained:

> State agencies have normally been treated as if they were the State of Maryland for purposes of immunity, so that they enjoy the same immunity from ordinary tort and contracts suits which the State enjoys. *See Md.–Nat'l Cap. P. & P. Comm'n v. Kranz, supra,* 308 Md. at 622, 521 A.2d at 731; *Austin v. City of Baltimore,* 286 Md. 51, 53, 405 A.2d 255 (1979). The reason for this is that State agencies

exist merely as the State's hands or instruments to execute [the State's] will. . . ." *Baltimore v. State,* 173 Md. 267, 271, 195 A. 571 (1937). Indeed, "to hold [state agencies] responsible for negligence would be the same as holding the sovereign power answerable to its action." 18 McQuillan, *Municipal Corporations,* § 53.24 at 279 (3d ed. rev. 1984).

Counties and municipalities, on the other hand, have not been accorded this broad general immunity from suit. *Md.-Nat'l Cap. P. & P. Comm'n v. Kranz, supra,* 308 Md. at 622, 521 A.2d at 731. It is true that they are instrumentalities of the State, created by the State to carry out some of the State's governmental functions. Nevertheless, under Maryland law, they have consistently been treated differently from State agencies and the State itself for purposes of immunity from suit. Thus, counties and municipalities have never been granted immunity in contract actions. *Md.-Nat'l Cap. P. & P. Comm'n v. Kranz, supra,* 308 Md. at 622, 521 A.2d at 731; *American Structures v. City of Balto.,* [*Baltimore* ] 278 Md, 356, 359–360, 364 A.2d 55 (1976). Their immunity "is limited to tortious conduct," *Austin v. City of Baltimore, supra,* 286 Md. at 53, 405 A.2d at 256. And, as to tort actions, the immunity is limited. As previously noted, it is inapplicable to nuisance actions. *Tadjer v. Montgomery County, supra,* 300 Md. [539] at 550, 479 A.2d [1321] at 1326 [ (1984) ]. It is also inapplicable to actions based on violations of constitutional rights. *Clea v. City of Baltimore,* 312 Md. 662, 667–668 n. 3, 541 A.2d 1303 (1988), and cases there cited.

With regard to ordinary tort actions, counties and municipalities can rely on the defense of governmental immunity only when they exercise a function categorized as "governmental" rather than "proprietary" or "corporate." *See, e.g., Md.-Nat'l Cap. P. & P. Comm'n v. Kranz, supra,* 308 Md. at 622, 521 A.2d at 731, and cases cited therein; *Godwin v. County Comm'rs,* 256 Md. 326, 334–335, 260 A.2d 295, 299 (1970); *Baltimore v. State, supra,* 173 Md. at 271–272, 195 A. at 574.

While the governmental immunity of counties and municipalities is much narrower than the immunity of the State, nevertheless the immunity of counties and municipalities is derived from the State's sovereign immunity. *See Bradshaw v. Prince George's County,* 284 Md. 294, 299–300, 396 A.2d 255 (1979); *Godwin v. County Comm'rs, supra,* 256 Md. at 334–335, 260 A.2d at 299; *Cox v. Anne Arundel County,* 181 Md. 428, 431, 31 A.2d 179 (1943) ("When the State gives a city or county part of its ... power to exercise, the city or county to that extent is the State").

In this case, the asserted liability of the Town clearly arises out of a governmental activity, the actions of the Town's Chief of Police pursuant to, or under the color of, his law enforcement authority. On that basis, the Town is entitled to the same broad governmental tort immunity as a State agency. Appellees contend, however, that the Town has no immunity with respect to a constitutional tort, the alleged deprivation by an agent of the Town of Mr. Petetit's State constitutional rights to "freedom from the use of excessive and unreasonable force" and "freedom from a deprivation of liberty without due process of law," as guaranteed under the Maryland Declaration of Rights. *Ashton v. Brown,* 339 Md. 70, 660 A.2d 447 (1995). *See also Clea v. City of Baltimore,* 312 Md. 662, 667 n. 3, 541 A.2d 1303 (1988).

In *Ashton,* the Court held that the City of Frederick had no governmental immunity from a tort suit alleging a violation of the plaintiff's constitutional rights, under article 24 of the Maryland Declaration of Rights, by the arrest and detention of the plaintiffs under an unconstitutional juvenile curfew ordinance enacted by the City. Noting that the City was directly responsible for the plaintiffs' constitutional injury, the Court said:

Maryland law provides no immunity for municipalities and other local government entitled from suits based upon violations of state constitutional rights. In *Clea v. City of Baltimore, supra,* 312 Md. at 667, 541 A.2d at 1305, this Court set forth the general rule that a municipality is

ordinarily immune from tort suits with respect to its "governmental" activities but not with respect to "proprietary" activities. Nevertheless, we went on to state as follows (312 Md. at 667 n. 3, 541 A.2d at 1305 n. 3):

> "The governmental-proprietary distinction has not been applied, however, when local governments have been sued for violations of constitutional rights. In that situation, there is ordinarily no local governmental immunity. *See, e.g., Hebron Sav. Bk. v. City of Salisbury,* 259 Md. 294, 269 A.2d 597 (1970); *Jarvis v. Mayor and City Council of Baltimore City,* 248 Md. 528, 534–535, 237 A.2d 446 (1968); *Burns v. Midland,* 247 Md. 548, 234 A.2d 162 (1967)."

*Accord: Board v. Town of Riverdale,* 320 Md. 384, 389–390, 578 A.2d 207, 210 (1990).

The Town argues that it cannot be held liable in tort for the conduct of Chief Maranto under the theory of *respondeat superior.* It notes, correctly, that in no case of municipality liability for a constitutional tort was that liability based solely on the tortious conduct of the municipality's agent or servant. For example, in *Ashton,* the liability of the City of Frederick was not predicated on the conduct of the officers who arrested and detained the youthful plaintiffs under color of the authority of the juvenile curfew ordinance; the City's liability was predicated on its own wrongful actions in enacting and enforcing the unconstitutional ordinance. And in the cases cited in footnote 3 in *Clea, supra,* municipal liability was based on unconstitutional actions by the municipalities, not on tortious conduct of agents or servants imputed to the municipalities under the doctrine of *respondeat superior.* In the *Hebron Savings Bank* case, the City of Salisbury's claim of immunity was rejected and it was held to be liable to the bank for destruction of a house on which the bank held a mortgage. The City had acted under a valid ordinance to abate a nuisance but had failed to afford the bank due process notice. Liability was based on an unconstitutional taking of the bank's property. Similarly, in *Jarvis,* liability of the City was based on an unconstitutional taking of property by demolishing a house in order to abate an alleged nuisance, without affording

the owner due process notice and an opportunity to be heard, there being no emergency to justify such precipitous action. In *Burns v. Midland,* the Court held that the municipality was not liable for the destruction of a deteriorated building determined to be a hazard because the owner had been afforded an opportunity to be heard.

We believe that the answer to the question of whether a municipality can be held liable, under the doctrine of *respondeat superior,* for a constitutional tort committed by its agent or employee lies in the language of the Court of Appeals in the above-quoted footnote in *Clea,* cited in *Board v. Riverdale, supra,* 320 Md. at 389, 578 A.2d 207, and quoted in *Ashton v. Brown, supra,* 339 Md. at 102, 660 A.2d 447:

> The governmental-proprietary distinction has not been applied, however, when local governments have been sued for violations of constitutional rights.

There would be no reason for the Court of Appeals to have made that statement other than to explain the reason for denying immunity to a municipality for a constitutional tort: such a tort will not be deemed to have been committed in the performance of the municipality's governmental functions. As noted above, when a county or municipality acts in its governmental capacity, as distinguished from a proprietary capacity, it is exercising a portion of the State's police power, delegated to it by the State. Because the commission of a constitutional tort cannot be a proper exercise of the delegated police power of the State, there is no basis for the application of the distinction between proprietary activities and governmental activities in order to confer governmental immunity on the municipality for such a tort. And when a municipality is liable for its torts, as it is when it acts in a proprietary capacity, it is responsible under the *respondeat superior* doctrine for the torts committed by its employees in the scope of their employment.

> "[A] municipality or county [or local agency] is liable for its torts if it acts in a private or proprietary capacity, while it is immune if acting in a governmental capacity. To the extent

that a [municipality,] county [or local agency] is liable in tort actions, it is also responsible under the doctrine of *respondeat superior* for the tortious conduct of its employees which occur in the scope of their employment."

*Austin v. Mayor and City Council of Baltimore,* 286 Md. 51, 53, 405 A.2d 255 (1979), quoting *Bradshaw v. Prince George's County,* 284 Md. 294, 300, 396 A.2d 255 (1979).

We hold, therefore, that a municipality is not entitled to governmental immunity for a constitutional tort committed by one of its agencies or employees and imputed to the municipality under the doctrine of *respondeat superior.* Since the Town has no governmental immunity from either liability or suit, the order denying its motion is not appealable under the collateral order doctrine. Therefore, we must dismiss its appeal.

APPEALS DISMISSED.

COSTS TO BE PAID BY APPELLANTS.

WILNER, Chief Judge, concurring.

I concur in the judgment reached by the panel majority.