605 A.2d 620

The TOWN OF BRUNSWICK

v.

Doreen O. HYATT.

No. 780, Sept. Term, 1991.

Court of Special Appeals of Maryland.

April 30, 1992.

Charles S. Fax, argued (Kathy L. McCalip, and Shapiro and Olander, on the brief), Baltimore; David E. Grover, Greenbelt, of counsel, for appellant.

John M. Robinson, argued, Frederick, for appellee.

Argued before MOYLAN, WENNER and DAVIS, JJ.

DAVIS, Judge.

This case involves an appeal from the Circuit Court for Frederick County. The appellant filed a Motion for Summary Judgment citing governmental immunity as its defense to suit. The trial court denied the appellant's motion, and the appellant now turns to this Court for review.[1]

---

1. Although not an issue presented to us as a preliminary matter, we note that the appealability, *vel non*, of a denial of a motion for summary judgment where the question is one of governmental immunity was addressed in *Board of Trustees v. Fineran*, 75 Md.App. 289, 541 A.2d 170 (1988), where we said, at 297, 541 A.2d 170:

> Ordinarily, an immediate appeal does not lie from the denial of a motion to dismiss or for summary judgment. Where the effect of that denial is a rejection of the defendant's claim of immunity from suit, however, such an appeal does apparently lie under the collat-

## Issues Presented

1. Whether the appellant is immune from liability for alleged negligence in the performance of governmental functions.
2. Whether the appellant's charter preserves its governmental immunity.
3. Whether the operation of the Brunswick Pool is a governmental function.
4. Whether the circuit court committed reversible error in denying the appellant's motion for summary judgment on the ground of governmental immunity.
5. Whether the doctrine of governmental immunity is constitutional.

## Statement of Facts

Pursuant to Article 23A of the Annotated Code of Maryland, the appellant-municipal corporation created the Brunswick Recreation Committee pursuant to an express grant of authority in Md.Ann.Code, art. 25, § 222 (1957 Repl.Vol.). The Recreation Committee was responsible for the construction and maintenance of the Brunswick Pool (Pool) for the use of the general public.

On June 15, 1988, the appellee attended the Pool and paid a small fee for the use of the facility. Upon exiting the women's rest room, the appellee slipped on a wet floor and suffered injury to her wrist, neck, and back. In a certified

---

eral order doctrine. *State v. Hogg*, 311 Md. 446, 535 A.2d 923 (1988), and cases cited therein.

We further observed, 75 Md.App. at 297, n. 1, 541 A.2d 170:

> We would be less than candid if we did not express our concern about the breadth of this aspect of *Hogg* and the practical difficulties that are involved in allowing immediate appeals whenever the defense of sovereign or governmental immunity is rejected through the denial of a motion to dismiss or for summary judgment under Md.Rule 2–322. In *Hogg*, and in most (though not all) of the cases allowing these essentially interlocutory appeals, the issues relating to the immunity defense can be resolved without becoming too entangled in the facts and merits of the underlying claim. Indeed, it is that very separation that brings the case under the collateral order doctrine.

letter dated April 20, 1989, the appellee notified the appellant of her injuries and then initiated suit to recover for her injuries.

On January 14, 1991, the appellant filed its Motion for Summary Judgment, accompanied by expense and revenue figures for the Pool and the affidavit of John L. Kendall, the Town Administrator of the Town of Brunswick. The appellant argued that, under current case law, the operation and maintenance of a public swimming pool is a governmental function. Though the appellant acknowledged that the test for governmental function is tied to whether the enterprise makes a profit, it maintained that, according to the figures submitted by the appellant, the Pool had not shown a profit for fiscal years 1987 through 1989, and thus the operation and maintenance of the town's pool would satisfy that test.

In her response, the appellee argued that the Pool had operated with a profit in recent years, and therefore the operation of the Pool was not a governmental function but a proprietary function, for which the appellant does not enjoy immunity. The Circuit Court for Frederick County denied the appellant's motion, and the appellant appealed to this Court for review.

### Legal Analysis

### Governmental Function

In its brief, the appellant argues that it is immune to suit for this accident under the theory of governmental immunity. The doctrine of sovereign immunity, rooted in the ancient belief "the king can do no wrong," is an integral part of our system of jurisprudence and has sustained numerous challenges. Sovereign immunity grants to the State and its agencies blanket immunity from tort liability.

The immunity extended to municipalities, however, is not as far-reaching as that enjoyed by the State. Municipalities and their agencies are only afforded immunity from tort liability when the tortious conduct occurred during the

exercise of a purely governmental function as opposed to a proprietary function. This Court has most recently delineated the differences between the two functions, stating:

> [M]unicipal immunity is not automatic, but when the municipality or county is engaged in a governmental function, immunity attaches.... The Court of Appeals in *Blueford*, 173 Md. at 276, 195 A. 571, outlined the test for determining whether a municipality is engaged in a governmental function as follows:
>
> > "Where the act in question is sanctioned by legislative authority, is solely for the public benefit, *with no profit or emolument inuring to the municipality,* and tends to benefit the public health and promote the welfare of the whole public, and has in it no element of private interest, it is governmental in its nature."

*Burns v. City of Rockville,* 71 Md.App. 293, 298, 525 A.2d 255 (1987), quoting *The Mayor and City Council of Baltimore v. State, Use of Alice Blueford,* 173 Md. 267, 276, 195 A. 571 (1937) (emphasis added) (citation omitted).

The Court of Appeals further clarified the test in *Tadjer v. Montgomery County,* 300 Md. 539, 547, 479 A.2d 1321 (1984), and explained that "[a]nother way of expressing the test ... is whether the act performed is for the common good of all or for the special benefit or profit of the corporate entity."

In the present case, the appellee argued below that the test outlined in *Burns* requires that, if the activity (*i.e.,* operation of the Pool) shows *any* profit, it is by definition a proprietary function and therefore does not enjoy immunity from tort liability. We are unpersuaded by that argument, in that it calls for an unreasonably narrow reading of this Court's ruling in *Burns.* A review of the Maryland decisions considering the distinction between governmental and proprietary functions is instructive.

### Burns v. City of Rockville

*Burns,* the most recent of the cases, involves a slip and fall at the Rockville Civic Center prior to a performance of

the Rockville Civic Ballet. The appellant attempted to sue the City of Rockville for negligence but was precluded by the granting of the City's Motion for Summary Judgment, on the basis of governmental immunity (the same procedural posture which exists in the case *sub judice*). In its discussion of whether the operation of a ballet company was governmental or proprietary, this Court cited the rule set forth *supra* that the test is comprised of (1) public benefit, (2) no profit, (3) health and welfare of the whole public, and (4) no element of private interest. *Burns*, 71 Md.App. at 298, 525 A.2d 255.

The discussion of the legislative authorization for the ballet and the benefit to the public at large are not exhaustive given that the ballet falls under the Department of Recreation and Parks of the City of Rockville and the observation that "[m]usic and dance uplift the spirit of the citizenry and provide an escape from the drudgery of day-to-day existence." *Id.* at 307, 525 A.2d 255.

There, the issue was ultimately the amount of profit. The appellants argued that several items of expense were not directly chargeable to the City of Rockville and therefore should not have been considered in determining the ballet's profitability. We then discussed various items of expense and whether those items were, in actuality, properly chargeable to the City. We disposed of the issue by deciding that, in opposition to the Motion for Summary Judgment, the appellants did not provide any affidavits supporting their allegations.

In *Burns*, the supervisor of the Arts and Special Programs Division of the Department of Parks and Recreation of the City of Rockville stated that the fee and ticket pricing policy of Rockville regarding the Ballet "neither anticipated to nor [did] they, cover the cost of running the Ballet." *Id.* at 298–99, 525 A.2d 255. The footnote, at 299, 525 A.2d 255, added, "At oral argument, counsel for Rockville stated that the cost of a ticket to one of the Ballet's performances was $1.50."

In discussing the public benefits prong of the test, we relied on *Austin v. Mayor and City Council of Baltimore,* 286 Md. 51, 405 A.2d 255 (1979), and *Blueford, supra,* while distinguishing *Eversole v. City of Columbus,* 169 Ohio St. 205, 158 N.E.2d 515 (1959), on the basis that the test was different from the test in Maryland.[2]

In our analysis of the issue of profitability, we held that the appellant did not generate a factual question about whether the expenses (the amount of which was not in dispute) should be utilized. We then decided that the four prongs of the *Blueford* test for governmental immunity had been satisfied. *Burns,* 71 Md.App. at 308, 525 A.2d 255.

### *Tadjer v. Montgomery County*

*Tadjer* involved the operation of a landfill. An employee of the appellant sued the appellant and others for injuries sustained in a methane gas explosion at his place of employment, an auto body shop. The appellant filed a third party claim against the County claiming that the County had created a dangerous condition on the land by operating a landfill on the property. The appellant sought indemnification or contribution from the County. The County demurred on the basis of governmental immunity, and the trial court sustained the demurrer.

In its discussion of whether the operation of a landfill is a governmental or proprietary function, the Court followed much the same analysis as we did in *Burns,* addressing the public benefit, profit, and health and welfare before concluding that "[t]he general rule at common law is that in collecting and disposing of garbage or rubbish a municipal corporation exercises a governmental rather than private function, and accordingly is immune from liability for torts

---

**2.** The test in Ohio, under *Eversole,* was that acts are proprietary if there is no obligation on the part of the municipality to perform them, but it does so for the comfort and convenience of its citizens, for which the city is directly compensated by levying assessments upon the property or where it is indirectly benefited by growth and prosperity of the city and its inhabitants, and the city has an election to do or omit to do those acts. *Burns,* 71 Md.App. at 306, 525 A.2d 255.

committed in the performance of such function." *Tadjer*, 300 Md. at 547, 479 A.2d 1321, quoting Annot., 156 A.L.R. 714, 716 (1945).

As was the case in *Burns*, the Court weighed the four factors set out in *Blueford*, noting that "[t]he fact that a fee was charged for material deposited in the landfill is not necessarily dispositive of the issue of whether this was a proprietary or governmental function." *Tadjer*, 300 Md. at 548, 479 A.2d 1321. The Court, citing *Austin*, observed that, though fees for participation in the summer camp were calculated to cover day-to-day operation of the Recreation Center, the City was still required to subsidize heavily those operations. *Tadjer*, 300 Md. at 548–49, 479 A.2d 1321.

The Court decided that the appellant had presented a "genuine dispute" as to whether the County had derived "substantial income" from the operation of the landfill but presented no clarification as to exactly what "substantial income" meant. The Court therefore held that the trial court rightfully sustained the County's demurrer as to the negligence counts (because of governmental immunity), but amendment should have been allowed to have a trial on the merits to determine what "substantial income" meant. *Id.* at 550, 479 A.2d 1321.

### Austin v. City of Baltimore

Finally, in *Austin*, the Baltimore City Department of Recreation and Parks operated a summer day camp for children at the Cahill Recreation Center. The camp was known as Camp Cahill. There was a $3.50 fee for participation in the camp, but that fee was adjusted or waived for those campers who were unable to pay. Those non-paying campers received the same services and participated in the same activities as the campers who paid the fee.

The campers took a trip to Greenbrier State Park. While on the trip, Camille Austin was permitted to go into the water without supervision and drowned. Her mother, on her behalf, sued the Mayor and City Council of Baltimore

for wrongful death. The City moved for Summary Judgment and invoked sovereign immunity as a bar to suit. The trial court denied the City's motion, and a jury returned a verdict of money damages. The City appealed, and we reversed the lower court, holding that the operation of the camp was governmental and therefore immunity applied. The Court of Appeals affirmed.

The analysis in *Austin* was much the same as that in *Burns* and *Tadjer,* and the fee actually charged for participation in the activity was only one of the factors considered. The focus of the analysis was on the purpose of the day camp, and whether that purpose was to benefit the public at large. Concerning fees, the Court cited *Blueford* and noted that

[o]ur determination in *Blueford* that the City was performing a governmental function was not affected by the fact that ... a minimal fee was exacted for the privilege of using the pool, "for in the eleven years of its existence the fees collected have never been sufficient to pay the expenses of maintaining the pool, and the deficit has been met from the general funds of the City." *Id.* 173 Md. at 276–77, 195 A. 571.

*Austin,* 286 Md. at 64, 405 A.2d 255.

Specifically, as to Camp Cahill, the Court opined:

Although the fees projected when the Camp Cahill budget was proposed may have generated sufficient funds to cover day-to-day expenses of the camp, it is "obvious," as the Court of Special Appeals ascertained, "that the City had a substantial capital investment in the Camp Cahill Recreation Center, and that it was required to subsidize the day-to-day operation of the Center and the day camp.".... We believe ... that the fees here did not result in a profit or emolument inuring to the City....

*Id.* at 66, 405 A.2d 255 (citation omitted).

### The Case *Sub Judice*

■ Applying the *Blueford* test, we note that the appellant-municipal corporation created the Brunswick Recrea-

tion Committee pursuant to an express grant of authority in Md.Ann.Code, art. 25, § 222 (1957 Repl.Vol.) and was responsible for the construction and maintenance of the Pool for the use of the general public. Under the first and third prongs of the test, it is clear that the Pool was "sanctioned by legislative authority," and that its operation and maintenance is designed for the enjoyment and benefit of the public at large and, in that regard, is thus a governmental function.

As to the issue of profit, we believe that an analysis of whether an activity is governmental or proprietary based primarily on whether the activity makes a profit does not comport with the test announced in *Blueford*. At oral argument, counsel for the appellee argued vigorously that profit was clearly the measure of governmental function versus proprietary function. We believe that the purpose of the activity (*i.e.*, whether the activity "tends to benefit the public health and promote the welfare of the whole public") is to be accorded equal weight with the question of profit.[3]

Because of the familial nature of a public swimming pool and its role in the community, the Court of Appeals, in *Blueford, supra,* spoke specifically regarding the policy issues related to the doctrine of governmental immunity and the operation of a public swimming pool. The Court opined:

> [P]ublic parks are vitally necessary to the public health and welfare, in the congested centers of population, in affording a temporary escape from the noise and dust and jostling of crowded city streets. *So, too swimming or wading pools and other public facilities for bathing have a direct and necessary relation to public health in afford-*

---

**3.** We are not unmindful of the reference in *Tadjer* to "income in an amount *substantially* in excess of the County's expenses" as determinative of a proprietary function; however, we believe the requirement that there be a substantial differential between income and expenses is compatible with the *Blueford* test, and greater emphasis simply shifts to the issue of whether there is an overriding profit motive, given the nature of the disparity between income and expenses.

*ing to the masses who are unable to go to the seashore or to inland lakes, or ponds or streams beyond the city, some opportunity of lessening the dangers and discomforts which are inseparable from the depressing and exhausting heat of the summer season.*

*Blueford,* 173 Md. at 274, 195 A. 571 (emphasis added).

The Court concluded that to take the protection of governmental immunity away from the municipality would have a chilling effect on the municipality's willingness to provide this most vital and substantial public service. The Court therefore held that the city was engaged in a governmental function and that governmental immunity was available as a defense to suit.

The decision of the Court of Appeals in *Austin v. City of Baltimore, supra,* similarly concluded "that the maintenance and operation of such a public convenience as a swimming pool was also a governmental function." *Id.* at 63, 405 A.2d 255, citing *Blueford,* 173 Md. at 273, 195 A. 571.

In accordance with the decisions of both this Court and the Court of Appeals, we hold that the fact of realizing a modest profit in the operation of the Pool by the appellant does not, *ipso facto,* preclude it from being a governmental function.

### Summary Judgment

Maryland Rule 2–501(a) states:

(a) **Motion.**—Any party may file at any time a motion for summary judgment on all or part of an action *on the ground that there is no genuine dispute as to any material fact and that the party is entitled to judgment as a matter of law.* The motion shall be supported by affidavit if filed before the day on which the adverse party's initial pleading or motion is filed. [Emphasis added.]

In *Burns,* we reiterated the function of the trial court in ruling on a motion for summary judgment:

In reviewing an award of summary judgment, the movant must have clearly demonstrated the absence of

any genuine issue of material fact and must also have demonstrated that he or she is entitled to summary judgment as a matter of law.... The purpose of a summary judgment hearing is not to determine disputed facts but to determine whether a genuine dispute as to any material fact exists. Moreover, the court may not attempt to decide any issue of credibility.... In determining whether a factual dispute exists, all inferences to be drawn from the pleadings, affidavits and admissions must be resolved against the moving party.... "[E]ven where the underlying facts are undisputed, if those facts are susceptible of more than one permissible inference, the choice between those inferences should not be made as a matter of law, but should be submitted to the trier of fact." ... Even if it is found unlikely that the party opposing the motion will prevail at trial, the motion should not necessarily be granted against that party.

*Burns,* 71 Md.App. at 296–97, 525 A.2d 255, quoting *Fenwick Motor Co. v. Fenwick,* 258 Md. 134, 138, 265 A.2d 256 (1970) (citations omitted).

Noting that there was no evidence before the Court about the amount of expenses and revenue derived from the operation of the landfill, we distinguished the facts in *Burns* from *Tadjer,* observing that,

[u]nlike *Tadjer,* this Court has before it the expense and income figures for the Ballet, and thus this case is governed by the holding in *Blueford* where the Court was able to determine that the operation of a swimming pool was not a profit-making proposition....

More important, the issue challenged in the case at bar is not a factual question. The Burnses do not dispute the numerical expense and revenue calculations provided in [the supervisor's] affidavit. Of utmost importance to the case *sub judice,* they do not contest that the figures provided were not the actual costs to Rockville for providing the space used by the Ballet. In an unverified opposition to the motion for summary judgment, the Burnses merely alleged that the challenged expenses

were "not actually paid or incurred by the City of Rock-ville and therefore should not be considered in determining the ballet's profitability." No affidavit was filed to support this claim.

*Burns*, 71 Md.App. at 301–02, 525 A.2d 255 (citations omitted).

In the case *sub judice*, the trial court denied appellant's motion for summary judgment. Appellee, in her Response to Motion for Summary Judgment, averred that the swimming pool was owned by appellant from 1978 through 1983, but operated by the local YMCA pursuant to a lease between the parties. She further represented that the Parks and Recreation Report to the Mayor and Council of Brunswick dated December 1986 revealed that, for that year, the Pool realized a profit of $5,000 (Exhibit F attached to her affidavit); and that for the fiscal years 1985 and 1986, the exhibits attached reflected profits of $1,273.18 and $4,743.51, respectively. Appellee, while conceding that the Pool suffered losses during the fiscal years 1987 and 1988, disputed appellant's claim that the loss for those years was larger.

Considering 1989, appellee asserts that there is a dispute as to a material fact, citing the report of council member Elwood F. Wineholt, who also served as the Chairman of the Recreation Commission during 1989, indicating a profit of $4,165.85 "at the swimming pool for June," adding that the "pool operation is still in the black for the season." Appellee contends that Wineholt's report, contained in the Committee Report attached as Exhibit G, contradicts the summary of the general ledger attached to the affidavit of John L. Kendall, Town Administrator for the Town of Brunswick, which claimed that the Pool suffered a loss of $26,368.89 for the year 1989.

In *Burns*, we held that the disputed matter would not have changed the fact that the ballet was not a money-making proposition. The trial court in the case before us was presented with the facts as set forth above from which he could, as in *Burns*, enter a judgment as a matter of law

on the profitability prong of *Blueford.* Appellee does not contest the accuracy of the figures submitted in the general ledger or the summary of those figures reproduced in Kendall's affidavit. Nor does she specify in what respect the losses for 1987 and 1988 were larger than the amounts set forth in the general ledger or the summary contained in Kendall's affidavit. The records indisputably show a $26,-368.89 loss for the fiscal year 1989 which is not contradicted by the reported profit of $4,165.85 for the month of June. The reference to the "pool operation [being] in the black for the season" apparently refers to the period of time that the pool is open for business (ostensibly June, July, and August of 1989). The net result is still a loss for the fiscal years 1987, 1988, and 1989 since the fiscal year for 1989 would end June 30, 1989.

The lower court therefore had exhibits before it indicating a profit for the years 1985 and 1986 and net losses for the operation of the swimming pool for the years 1987, 1988, and 1989. Since appellee has presented no facts to controvert the accuracy of the records submitted (and indeed neither the alleged discrepancy in the losses for 1987 and 1988 nor the appellee's averments about 1989 portend to change a loss into a profit or vice versa), there was before the lower court no issue of fact to resolve, and hence summary judgment would have been appropriate. Accordingly, we hold that the lower court erred in denying the motion for summary judgment as we believe that all of the facts necessary to a determination of whether the swimming pool operated at a profit were before it. We therefore reverse the lower court's denial of appellant's motion for summary judgment on the basis that there was before it no dispute as to any material fact and that summary judgment should have been entered for the appellant or the appellee as a matter of law.

### Preservation of Immunity

The appellant next asks whether its municipal charter preserves its governmental immunity. The appellant presents § 16–1 of its charter for our review:

*Section 16–1. Continuation of Corporation.*
The citizens of the Town of Brunswick are and shall continue to be a body corporate, by the name of the mayor and council of Brunswick, and by that name shall have perpetual succession, *sue, and be sued,* have and use a common seal and may purchase and hold real estate or dispose of the same for the benefit of the town. (Code 1930, art. 11, § 32; 1943, ch. 740, § 1) [Emphasis added.]

We decided in *Burns* that the statement "to sue and be sued" contained in various municipal charters throughout the State "definitely is not a general consent to suits of any and all kinds, but it is expressly limited to such actions as would be necessary in order to carry out the purpose[s] [of the municipality]." *Burns*, 71 Md.App. at 309, 525 A.2d 255, quoting *Lohr v. Upper Potomac River Commission*, 180 Md. 584, 589, 26 A.2d 547 (1942). We have already held that the waiver of immunity is ineffective unless

specific legislative authority to sue is given and unless there are funds available for the satisfaction of the judgment, or power is reposed in the defendant for the raising of funds necessary to satisfy a recovery against it.

*Heffner v. Montgomery County*, 76 Md.App. 328, 337, 545 A.2d 67 (1988).

By reason of our ruling in *Burns* and the fact that there was no specific legislative authority given to waive immunity, under our holding in *Heffner, supra,* we hold that the appellant's charter adequately preserves its defense of governmental immunity.

Constitutionality of Governmental Immunity

■ This Court, as well as the Court of Appeals, has been urged to abolish the doctrine of governmental immunity, and to date we have declined to do so because it is "consistent with sound public policy [and has] worked effectively in divers[e] factual situations." *Burns*, 71 Md.App. at 314, 525 A.2d 255, quoting *Austin*, 286 Md. at 60, 405 A.2d 255. Additionally, the prerogative to abrogate such a fundamental precept of our system of government is best

**570**

left to the legislative arm of government. *Austin*, 286 Md. at 57, 405 A.2d 255. We further note that the Legislature has also had several opportunities to modify the doctrine, and it too has declined to disturb this firmly anchored principle.[4] We therefore hold that the doctrine of governmental immunity is constitutional.

ORDER DENYING MOTION FOR SUMMARY JUDGMENT VACATED; CASE REMANDED FOR ENTRY OF JUDGMENT FOR APPELLANT.

COSTS TO BE PAID BY APPELLEE.

---

4. Since 1985, forty-six bills dealing with sovereign immunity have been introduced in the General Assembly. Of those forty-six bills, seventeen have been enacted into law, and yet none of them have abolished the doctrine of sovereign or governmental immunity. *General Assembly of Maryland Subject Index to Proposed Legislation, (1985–1991 Sessions)*, Department of Legislative Reference.