719 A.2d 998

CITY OF DISTRICT HEIGHTS et al.

v.

Deborah DENNY.

No. 1920, Sept. Term, 1997.

Court of Special Appeals of Maryland.

Oct. 28, 1998.

510

William J. Chen, Jr. (Chen, Walsh, Tecler & McCabe on the brief), Rockville, for appellants.

Mary Ann Ryan (Anna M. Coyle and Ryan & Coyle on the brief), Laurel, for appellee.

Argued before THIEME, KENNEY and BYRNES, JJ.

KENNEY, Judge.

On November 25, 1996, appellee, Deborah Denny, a commissioner of the City of District Heights,[1] filed a complaint in the Circuit Court for Prince George's County against Mary A. Pumphrey, the Mayor of the City of District Heights, Cheyenne Watson, Vice–Mayor and Commissioner of the City of District Heights, Americo Sesso, Commissioner of the City of District Heights, and the City of District Heights (collectively, "appellants"). The four-count complaint alleged defamation, violation of 42 U.S.C. § 1983, intentional infliction of emotional

---

1. Article III, § 301 of the Charter of District Heights provides that "[a]ll legislative powers of the City shall be vested in a Commission of four commissioners and a Mayor who shall be elected as hereinafter provided...."

distress, and malfeasance in office. Appellants removed the action to federal court, which dismissed, with prejudice, the § 1983 claim and remanded the remaining state law claims to the circuit court.

On September 9, 1997, appellants filed a motion to dismiss, asserting, *inter alia*, that they were protected from suit by various doctrines of immunity. On October 20, 1997, the trial court filed an order that denied appellants' motion to dismiss. Appellants filed this appeal, asking three questions, which we have rephrased:

I. Were appellee's claims against Pumphrey, Watson, and Sesso barred by the doctrine of absolute immunity or the doctrine of public official immunity?

II. Was the action against the City of District Heights barred by the doctrine of governmental immunity?

III. Did the trial court err by denying appellants' motions to dismiss?

As to appellants' first question, to the extent that liability was based on the Commission's decision not to investigate Sesso, we hold that appellee's claims against Pumphrey, Watson, and Sesso are barred by the doctrine of absolute immunity. To the extent that his liability was based on the comments he allegedly uttered, we hold that Sesso is not entitled to absolute immunity and that the applicability of public official immunity must be resolved by the trial court. As to appellants' second question, we hold that appellee's claims against the City of District Heights are barred by the doctrine of governmental immunity. We decline to address appellants' third question as it relates to appellant Sesso because it involves matters not presently ripe for appellate review.

## FACTS

In affidavits attached to the complaint and incorporated therein, three employees of the Department of Public Works for the City of District Heights testified that appellant Americo Sesso made disparaging and racist remarks about appellee. Brian Edwards testified that, on August 2, 1996, he had a

conversation with Sesso in the Public Works' garage and that, during this conversation, Commissioner Sesso made defamatory comments about Commissioner Denny's race and professional abilities. Robert Vasquez testified that, on August 2, 1996, he was in the Public Works' garage and he heard Sesso make defamatory comments about Commissioner Denny's race and professional abilities. George Benton testified that he had heard Sesso make derogatory remarks about Commissioner Denny.

According to her complaint, appellee asked Sesso for a public apology but none was forthcoming. Thereafter, during an open meeting of the Commission, appellee raised the issue of Sesso's comments and demanded that the matter be investigated. According to appellee, however, "defendant Mayor Mary Pumphrey, as head of the Commission, and the other defendant commissioners, brushed off these highly publicized slurs, refused to allow [her] to raise this matter again, and refused to launch an investigation into the incident." Appellee responded by filing the underlying complaint, alleging defamation, violation of 42 U.S.C. § 1983, intentional infliction of emotional distress, and malfeasance in office.

The case was removed to the United States District Court for the District of Maryland, which dismissed appellee's federal claim, with prejudice. The court stated:

Proceeding directly to the merits, this is an unfortunate case of name-calling and insults. While the racial epithets alleged may well give rise to causes of action under state law [See *Gaiters v. Lynn*, 831 F.2d 51 (4th Cir.1987); see generally, Rodney A. Smolla, *Rethinking First Amendment Assumptions About Racist and Sexist Speech*, 47 WASH. & LEE L. REV. 171 (1990),] federal law is clear. Federal civil rights statutes, including 42 U.S.C. § 1983, are not transgressed. *Paul v. Davis*, 424 U.S. 693, 712 [96 S.Ct. 1155, 47 L.Ed.2d 405] (1976). Denny's claim of violation of 42 U.S.C. § 1983 is therefore DISMISSED WITH PREJUDICE.

The case was remanded to the circuit court for a determination on the remaining state law claims. Upon remand, appel-

lants filed a motion to dismiss, asserting that the remaining claims against Pumphrey, Watson, and Sesso were barred by the doctrine of absolute immunity and/or the doctrine of public official immunity, and that the claims against the City of District Heights were barred by the doctrine of governmental immunity. On October 20, 1997, appellants' motion to dismiss was denied by the trial court without comment.

## DISCUSSION

### I.

### Motion to Dismiss

We are currently presented with an appeal of the denial of a motion to dismiss filed pursuant to Maryland Rule 2–322(b). In reviewing the grant or denial of a motion to dismiss filed pursuant to this rule,

> 'we must assume the truth of all relevant and material facts that are well pleaded and all inferences which can reasonably be drawn from those pleadings. The complaint should not be dismissed unless it appears that no set of facts can be proven in support of the claim set forth therein.'

*Simms v. Constantine*, 113 Md.App. 291, 294, 688 A.2d 1 (1997)(quoting *Bennett Heating & Air Conditioning, Inc. v. NationsBank of Maryland*, 103 Md.App. 749, 757, 654 A.2d 949 (1995), *rev'd in part on other grounds*, 342 Md. 169, 674 A.2d 534 (1996) (citations omitted)).

█ Because the denial of a motion to dismiss is not a final judgment, it is ordinarily not subject to interlocutory review. Appellants contend, however, that, because they asserted various immunity defenses in their motion to dismiss, the denial of that motion is immediately appealable under the collateral order doctrine. Before discussing the elements of that doctrine, we consider first the nature of the immunities asserted by appellants.

## II.

## Immunity

Pumphrey, Watson, and Sesso contend that the claims against them are barred by the doctrine of absolute immunity and/or the doctrine of public official immunity. In *Montgomery County v. Schooley,* 97 Md.App. 107, 115, 627 A.2d 69 (1993), this Court held that it is "beyond dispute that municipal legislators enjoy the protection of immunity when acting in the sphere of legitimate legislative activity." *See also Manders v. Brown,* 101 Md.App. 191, 205, 643 A.2d 931, *cert. denied,* 336 Md. 592, 650 A.2d 238 (1994). We explained that

> [t]he purpose of this immunity is to insure that the legislative function may be performed independently without fear of outside interference.... To preserve legislative independence, we have concluded that 'legislators engaged "in the sphere of legitimate legislative activity" ... should be protected not only from the consequences of litigation's results but also from the burden of defending themselves.'

*Schooley,* 97 Md.App. at 116, 627 A.2d 69 (quoting *Supreme Court of Virginia v. Consumers Union,* 446 U.S. 719, 731–32, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980)).

We have recognized previously, however, that not everything a municipal official does in his or her official capacity is legislative. *Manders,* 101 Md.App. at 210, 643 A.2d 931. In fact, municipal officials often act as "executives and administrators who enforce and administer the law, especially in county or commission forms of government where there is no separate executive official." *Id.* For instance, "when municipal officials do more than adopt prospective, legislative type rules and take the next step into the area of enforcement," that activity is most appropriately characterized as executive. *Id.*

In lieu of designing a specific test for determining what is and what is not legislative activity, Maryland has adopted a "functional approach" to legislative immunity, where the scope of immunity is determined in light of the functions and duties

of municipal officials. See *Manders, supra; Mandel v. O'Hara,* 320 Md. 103, 576 A.2d 766 (1990). Under this approach, if the conduct engaged in by a municipal official can be characterized as "legislative," the actor is absolutely immune from any liability or suit emanating from that action. *Id.*

██ Pumphrey, Watson, and Sesso also contend that, even if they are not entitled to absolute immunity, appellee's claims against them are barred by the doctrine of public official immunity. In Maryland, public official immunity is recognized both at common law and by statute. For common law public official immunity to apply:

> (1) the actor must be a public official, rather than a mere government employee or agent; (2) the conduct must have occurred while the actor was performing discretionary, as opposed to ministerial, acts; and (3) the actor must have performed the relevant acts within the scope of his official duties. If those three conditions are met, the public official enjoys a qualified immunity in the absence of 'malice.'

*Thomas v. City of Annapolis,* 113 Md.App. 440, 452, 688 A.2d 448 (1997).

██ In addition, the General Assembly has enacted a statutory public official immunity, which provides that "[a]n official of a municipal corporation, while acting in a discretionary capacity, without malice, and within the scope of the official's employment or authority shall be immune as an official or individual from any civil liability for the performance of the action." Md.Code (1974, 1995 Repl.Vol., 1997 Cum.Supp.), § 5–507(b)(1) of the Courts and Judicial Proceedings Article ("C.J."). In either form, common law or statutory, "[p]ublic official immunity is qualified, not absolute." *Nelson v. Kenny,* 121 Md.App. 482, 487, 710 A.2d 345 (1998). "It may be defeated by proof of malice, i.e. affirmative evidence that the official 'intentionally performed an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and wilfully injure the plaintiff.' " *Id.* (quoting *Davis v. DiPino,* 99 Md.App. 282, 290, 637 A.2d 475 (1994), *rev'd on other*

*grounds,* 337 Md. 642, 655 A.2d 401 (1995)); *Ashton v. Brown,* 339 Md. 70, 117, 660 A.2d 447 (1995)("Public official immunity is not a defense to intentional torts."). Moreover, Maryland does not ordinarily provide public official immunity to public officials sued for violating an individual's state constitutional rights. *Ashton,* 339 Md. at 102, 660 A.2d 447.

The City of District Heights contends that appellee's claims against it are barred by the doctrine of governmental immunity. The scope of governmental immunity was recently summarized by this Court in *Town of Port Deposit v. Petetit,* 113 Md.App. 401, 688 A.2d 54, *cert. denied,* 346 Md. 27, 694 A.2d 950 (1997):

'State agencies have normally been treated as if they were the State of Maryland for purposes of immunity, so that they enjoy the same immunity from ordinary tort and contracts suit which the State enjoys. "The reason for this is that State agencies exist merely as the State's hands or instruments to execute [the State's] will...." Indeed, "to hold [state agencies] responsible for negligence would be the same as holding the sovereign power answerable to its action."

Counties and municipalities, on the other hand, have not been accorded this broad general immunity from suit. It is true that they are instrumentalities of the State, created by the State to carry out some of the State's governmental functions. Nevertheless, under Maryland law, they have consistently been treated differently from State agencies and the State itself for purposes of immunity from suit. Thus, counties and municipalities have never been granted immunity in contract actions. Their immunity "is limited to tortious conduct." And, as to tort actions, the immunity is limited. As previously noted, it is inapplicable to nuisance actions. It is also inapplicable to actions based on violations of constitutional rights.

With regard to ordinary tort actions, counties and municipalities can rely on the defense of governmental immunity only when they exercise a function categorized as "governmental" rather than "proprietary" or "corporate."

While the governmental immunity of counties and municipalities is much narrower than the immunity of the State, nevertheless the immunity of counties and municipalities is derived from the State's sovereign immunity.'

*Id.* at 418–19, 688 A.2d 54 (quoting *Board of Education v. Town of Riverdale,* 320 Md. 384, 388–89, 578 A.2d 207 (1990) (citations omitted)).

■ The distinction between a "governmental" function and a "proprietary" function was explained in *Town of Brunswick v. Hyatt,* 91 Md.App. 555, 605 A.2d 620 (1992). In that case, this Court stated:

[M]unicipal immunity is not automatic, but when the municipality or county is engaged in a governmental function, immunity attaches.... The Court of Appeals ... outlined the test for determining whether a municipality is engaged in a governmental function as follows:

'Where the act in question is sanctioned by legislative authority, is solely for the public benefit, with no profit or emolument inuring to the municipality, and tends to benefit the public health and promote the welfare of the whole public, and has in it no element of private interest, it is governmental in nature.'

*Id.* at 559, 605 A.2d 620 (citations omitted; emphasis omitted). "The governmental-proprietary distinction has not been applied, however, when local governments have been sued for violations of constitutional rights." *Town of Port Deposit,* 113 Md.App. at 422, 688 A.2d 54. In that scenario, "there is ordinarily no governmental immunity." *Id.* at 421, 688 A.2d 54 (quoting *Clea v. City of Baltimore,* 312 Md. 662, 667 n. 3, 541 A.2d 1303 (1988)).

## III.

### The Collateral Order Doctrine

■ Generally, a party may only appeal from a final judgment, that is, a judgment that settles the rights of the parties or concludes the cause." *Town of Port Deposit,* 113 Md.App. 401, 409, 688 A.2d 54 (1997); C.J. § 12–301. Obvi-

ously, the denial of appellants' motion to dismiss did not constitute a final judgment on the merits. The Court of Appeals, however, "has 'long recognized ... a narrow class of orders, referred to as collateral orders, which are offshoots of the principal litigation in which they are issued and are immediately appealable as "final judgments" without regard to the posture of the case.' " *Id.* at 410, 688 A.2d 54 (quoting *State v. Jett*, 316 Md. 248, 558 A.2d 385 (1989)). For an order to be appealable under "the collateral order doctrine," it must:

> 1)conclusively determine the disputed question, 2) resolve an important issue, 3) be completely separate from the merits of the action, and 4) be effectively unreviewable on appeal from a final judgment.

*Nelson*, 121 Md.App. at 485, 710 A.2d 345; *Town of Port Deposit*, 113 Md.App. at 410, 688 A.2d 54.

In *Nelson, supra,* this Court "discussed the jurisdictional posture of interlocutory appeals from orders denying summary judgment on immunity grounds, brought under the collateral order doctrine." *Nelson*, 121 Md.App. at 486, 710 A.2d 345. We explained that

> '[a]n interlocutory appeal [of the denial of a motion for summary judgment premised on immunity] is permitted only because, if complete and absolute immunity exists, it may, under certain circumstances, encompass the right to be immune from the trial process itself, and, thus, if an immunity claim is wrongfully denied, absent an immediate appeal, the right not to be tried, if it exists is lost.'

*Id.* (quoting *Bradley v. Fisher*, 113 Md.App. 603, 605, 688 A.2d 527 (1997)).

The application of the collateral order doctrine to the denial of a motion for judgment on immunity grounds depends on the type of immunity asserted. In *Nelson*, we concluded that an interlocutory appeal of a denial of a motion for summary judgment premised on absolute immunity,

> like the constitutional guarantee against double jeopardy, is a time-bound right that fits precisely the framework of the collateral order doctrine: it is an important issue separate

and apart from the merits of the case that is effectively unreviewable on appeal from a final judgment because taking the case to a final judgment will destroy the right. *Id.* at 486, 710 A.2d 345.

When the denial of a motion for summary judgment is based on qualified or public official immunity, however, we concluded that

> application of the collateral order doctrine is not as clear cut for two reasons. First, it may not be possible to determine whether the defendant is entitled to qualified immunity without resolving disputes of fact that go to the merits of the case. In that circumstance, the issue of qualified immunity is not 'collateral,' within the meaning of the collateral order doctrine: 'When ... resolution of the immunity defense depends upon disputed factual issues, or upon mixed questions of fact and law, an immediate appeal will not lie, and review of the qualified immunity determination will have to await the trial court's resolution of the factual questions.' Only when a qualified immunity defense can be decided without delving into and resolving disputed facts is an interlocutory order denying summary judgment sufficiently separate from the merits of the case to qualify as a collateral order. Second, even if the issue is truly collateral, the defense of qualified immunity may not be effectively unreviewable on appeal from a final judgment because it may not be tantamount to a right not to be tried.

*Nelson,* 121 Md.App. at 486, 710 A.2d 345 (citations omitted).

Finally, when the denial of a motion for judgment involves a claim of governmental immunity, the ruling is also subject to being reviewed under the collateral order doctrine. In *Town of Brunswick v. Hyatt* 91 Md.App. 555, 605 A.2d 620 (1992), this Court reviewed whether a municipality was immune from liability under the theory of governmental immunity. Although the collateral doctrine was not specifically at issue in that case, we noted that, where the effect of the denial of a motion for summary judgment is to reject a defendant's claim of governmental immunity, an appeal "does apparently lie

under the collateral order doctrine." *Id.* at 556 n. 1, 605 A.2d 620 (citing *Board of Trustees v. Fineran,* 75 Md.App. 289, 541 A.2d 170 (1988)).

Because certain of the immunity defenses raised are such that, if applicable, appellants can avoid trial, we hold that the denial of the motion to dismiss in this case as to those issues is immediately reviewable under the collateral order doctrine. Thus, we shall now proceed to evaluate the merit of those claims.

## IV.

### Application

### A.

### Pumphrey and Watson

In this case, the asserted liability against Pumphrey and Watson is based exclusively on the Commission's decision not to investigate Sesso for the comments he allegedly made about appellee. Specifically, the complaint alleges, in relevant part:

7. On or about July 29, 1996, and again on or about August 2, 1996, the defendant Commissioner Americo Sesso uttered extreme and outrageous racial, profane, gender-biased, and derogatory slurs against the female plaintiff. These slurs were uttered in public, outside of the realm of legislative immunity.

8. The slurs uttered by the defendant Sesso also attacked the plaintiff's educational and professional qualifications for the position of commissioner which she held.

9. The plaintiff asked the defendant Sesso for a public apology. To this day, the defendant Sesso has not issued one.

10. The female plaintiff, in open session of the Commission, raised the issue of these public verbal attacks by the defendant Co–Commissioner Sesso. The defendant Mayor Mary Pumphrey, as head of the Commission, and the other defendant commissioners, brushed

off these highly publicized slurs, refused to allow the female plaintiff to raise this matter again, and refused to launch an investigation into the incident.

11. Although they were given by the powers of their position sole authority of investigation, the defendants refused to investigate and/or ask the defendant Sesso for his resignation.

12. By refusing to launch an investigation into the outrageous and extreme statements of the defendant Sesso, the defendants have constructively adopted defendant Sesso's slurs and attacks as their own.

Pumphrey and Watson contend that the Commission's decision not to investigate Sesso was a discretionary act made within the sphere of their legislative duties and that they are absolutely immune from liability or suit arising from that conduct. Appellee counters that the doctrine of absolute immunity does not apply to this action because the refusal to conduct an investigation of Sesso did not require appellants to act in their legislative capacity. We agree with appellants.

In *Walker v. D'Alesandro*, 212 Md. 163, 173, 129 A.2d 148 (1957), the Court of Appeals stated that municipal officials are entitled to absolute immunity for those acts taken "within the actual field of the ... powers or duties as [a local government official] or so closely related thereto as to be entitled to an absolute privilege." Certainly, determining the agenda and the direction of official proceedings is a discretionary power that comes within the sphere of legitimate legislative activity. Thus, to the extent they are based on these activities, we hold that appellee's claims against Pumphrey and Watson are barred by the doctrine of absolute immunity and should have been dismissed, with prejudice.

### B.

### Sesso

Unlike Pumphrey and Watson, Sesso's liability in this case is premised not only on his participation in the Commis-

sion's decision not to investigate his comments but also on the defamatory comments he allegedly made about appellee. To the extent that his liability is based on the actions of the Commission, Sesso is entitled to the same absolute immunity as Pumphrey and Watson. To the extent that appellee's claims are based on the defamatory comments he allegedly made, however, Sesso is not entitled to absolute immunity, as there is no present basis for concluding that those comments were made within the sphere of legitimate legislative activity.

 Whether Sesso is entitled to public official immunity cannot be resolved on this appeal. While there is no question that Sesso was a public official when the alleged comments were made, the record does not fully reveal the context in which these statements were expressed. It is evident, however, that the alleged statements were communicated to employees of the City of District Heights, indicating the possibility, even though remote, that the statements were made as Sesso conducted discretionary business within the scope of his duties as a commissioner. Moreover, the public official immunity Sesso claims is available to him only if he acted without malice, and, "ordinarily, the presence or absence of malice is a fact to be determined at trial." *Town of Port Deposit,* 113 Md.App. at 414, 688 A.2d 54. In sum, whether Sesso is entitled to the public official immunity defense must be determined by the trier of fact. Thus, to the extent it was based on the statements Sesso allegedly made about appellee, the order denying appellants' motion to dismiss is not a collateral issue, and this Court does not have jurisdiction to review this aspect of their appeal.

## C.

### The City of District Heights

 In this case, the only asserted liability of the City of District Heights arises out of the conduct of several commissioners at an "open hearing" of the Commission. Because we agree with appellants that appellee's complaint fails to allege adequately a violation of constitutional rights, the immunity of

the City of District Heights in this case turns on whether the actions upon which liability is based are "governmental" as opposed to "proprietary." We hold that the determination by the Commission not to investigate Sesso was a "governmental," as opposed to "proprietary" or "corporate," act and that the City of District Heights is entitled to the same broad governmental tort immunity as a state agency. Accordingly, under the present circumstances, the City of District Heights enjoys a right not to be tried and, therefore, appellee's claims against it should be dismissed, with prejudice.

## V.

### Dismissal on the Merits

Finally, appellants argue that, even if they are not entitled to any of the asserted immunity defenses, this Court should still grant their motion to dismiss because appellee's complaint failed to state a claim upon which relief could be granted. Having previously concluded that appellee's claims against Pumphrey, Watson, and the City of District Heights are, in fact, barred by various doctrines of immunity, we review appellants' argument only as it applies to Sesso, the sole remaining defendant to this litigation.

The counts against Sesso are defamation, intentional infliction of emotional distress, and malfeasance in office. As to Count I, defamation, the complaint states:

16. The defendants, individually and jointly and severally, have gone outside of their duties by accusing the female plaintiff of being unfit to be a commissioner.

17. Defendant Commissioner Americo Sesso made profane racial slurs and accused the female plaintiff of being unqualified and unfit to be a commissioner.

18. The Defendants adopted the position of Defendant Americo Sesso by refusing to launch an investigation into these attacks and by refusing to ask for the resignation of Commissioner Sesso.

19. At all times, the defendants knew that the public statements made against the female plaintiff—extremely racial and derogatory—were illegal, had no truth whatsoever, and were in fact, defamatory and personally malicious.

20. The defendants acted with knowledge of the falsity of their statements and with the intent to harm the female plaintiff's employment as a commissioner.

21. As the result of the false and defamatory statements made by the defendants, the character and reputation of the female plaintiff was harmed and her reputation and standing in the community was tarnished. All of these are crucial to the female plaintiff continuing her employment.

22. All of the actions complained of, among others, are demonstrative that the defendants have acted outside the lawful scope of their authority and duty and their actions have been illegal as defined by law.

As to Count III, intentional infliction of emotional distress, the complaint states:

32. The aforesaid actions of the defendants were willful, intentional, reckless, and in deliberate disregard of a high probability that emotional distress would result to the female plaintiff.

33. That as a result of the aforesaid conduct of the defendants, the female plaintiff has suffered and will continue to suffer severe and extreme emotional distress.

As to Count IV, malfeasance in office, the complaint states:

35. The defendants have misused their powers of office as set forth herein above, including, but not limited to, stating and adopting defamatory slurs against a fellow commissioner and attempting to cover-up these public slurs, and other acts of wrongdoing.

36. At all times pertinent hereto, the defendants were clothed with the authority of the State.

37. All of these actions are illegal and beyond the scope of the duty of the defendants.

38. The defendants have attempted to create a despotism that is incompatible with the Constitution of the United States and the Maryland Declaration of Rights.

39. The actions of the defendants are in excess of any lawful authority and are in violation of the Charter of the City of District Heights, the authority given to public officers, and the defendants' public duties as fiduciaries to the citizens of the City of District Heights.

Appellants give various reasons why appellee's complaint fails to state a claim upon which relief can be granted and why the trial court should have granted their motion to dismiss. As we noted earlier, however, the collateral order doctrine permits an appeal of only a narrow class of orders, which are treated as final judgments. On this appeal, however, the only grounds raised that justify an immediate review of the denial of the motion to dismiss were based on various doctrines of immunity, which we have already discussed. Thus, we decline to address appellants' additional challenges to the trial court's action until there is a final judgment on the merits. See *Planning Board of Howard County v. Mortimer,* 310 Md. 639, 654, 530 A.2d 1237 (1987); Md. Rule 8–131(e)("An order denying a motion to dismiss for failure to state a claim upon which relief can be granted is reviewable only on appeal from the judgment.").

**JUDGMENT AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID ½ BY APPELLANTS AND ½ BY APPELLEE.**